[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action for foreclosure of a mortgage. The plaintiff, Springfield Institution for Savings, is a Massachusetts banking institution. On July 22, 1988 the defendants, Calvin M. Tatum and Doris N. Ford, became indebted to the plaintiff in the sum of Two Hundred and Fifty-six Thousand Two hundred dollars ($256,200.00), as evidenced by their promissory note (Plaintiffs Ex. C). Also on July 22, 1988 by their deed, to secure said note, the defendants mortgaged their property known as 285 West Mountain Road, in Simsbury to the plaintiff. (Plaintiffs Ex. D) The note provides for payment of $256,200 (principal), plus interest at an adjustable rate to be determined under paragraph 4 of the note. Payments of principal and interest were to be paid on the first of each month beginning on September, 1988, with the full amount due to be paid in full on August 1, year 2018. (Paragraph 3). Paragraph 7 of the note provides that if the note holder has not received the full amount of any monthly payment by the end of fifteen calendar days after the date it is due, there will be a late charge. It further provides that if the borrowers do not pay the full amount of each monthly payment on the date it is due, they will be in default. Subparagraphs (C), (D) and (E) provide as follows:
"(C) Notice of Default
 If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed or delivered to me.
"(D) No Waiver by Note Holder
 Even if, at a time when I am in default, the Note Holder does not require me to pay immediately CT Page 7985 in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.
"(E) Payment of Note Holder's Costs and Expenses
 If the Note Holder has required me to pay immediately as described above, the Note Holder will have the right to be paid back by me for all its reasonable costs and expenses to the extent not prohibited by applicable law. Those expenses may include, for example, reasonable attorneys' fees."
 A history of the transactions follows. (Plaintiff's Ex. Z).
The closing took place on July 22, 1988. Payments were to be $2,107.69 per month, plus real estate taxes and insurance for a total of $2,415.00 per month). The bank's record of the transactions shows the following. (Plaintiff's Ex. Z.)
 The payment which was due on October 1, 1988 was not made until October 31st, thus incurring a late charge. A letter concerning same was sent to defendants on October 26 (P's Ex. G)
No payment was made in November, 1988.
 On November 19, 1988 a delinquent letter was sent to the defendants.
On December 3, 1988 another delinquent letter was sent.
On December 6, 1988 another delinquent letter was sent.
 On December 21, 1988 Mrs. Ford called the bank and said she didn't know the bank hadn't received the November payment and that she would send a replacement.
 On January 5, 1989 a letter of delinquency was sent stating that the payments were past due for November, December, and January (Ex. H). CT Page 7986
 On January 12, 1989 the bank received a payment for the month of November only, but it was returned to borrowers because the defendants were three months in arrears. (Defendant's Ex. 4).
 On January 30, 1989 three payments were made which were applied toward the months of November, December, and January. One check in the amount of $1,534.89 had to be returned to borrowers for insufficient funds.
 On February 14, 1989 the bank received payment for the amount still owed for January, and full payment for February. The account was then current.
 On March 30, 1989 the bank received a late payment for the month of March.
 On May 5, 1989 the bank received a late payment for the month of April.
 On May 26, 1989 Mr. Tatum called the bank and said he mailed the May payment on the 25th. However, the payment was not received.
On June 3, 1989 a delinquent notice was sent.
 On June 6, 1989 the bank called the defendants to tell them that payments for May and June were due no later than June 15th.
 On June 20, 1989 Mr. Tatum called to say the bank would receive payment for May and June within a few days.
On June 30, 1989 the May and June payments were made.
No payment was made for July until July 28, 1989.
 On August 22, 1989 a delinquent notice was sent for the month of August.
On September 5, 1989 another delinquent notice was sent.
 On October 2, 1989 the bank received payment for the months of August and September. However, the check was returned for insufficient funds on October 10, 1989. CT Page 7987
 On October 27, 1989 the bank received a payment for the months of August, September, and October. The defendants were then current.
 On November 18, November 27th, and December 8th, 1989 late notices were sent because the defendants hadn't made payments for the months of November and December.
 On December 22, 1989 a payment was received for the months of November and December. The defendants were then current.
 On March 1, 1990, a letter was sent to defendants explaining that payments were now due for the months of January, February, and March. Although telephone calls were made back and forth between the parties during March, no payments were made.
On April 3, 1990 a delinquency letter was sent.
 On April 20, 1990 the bank received $4,000, part of which was applied to the January payment, and part was held in escrow toward the February payment.
 On May 17, 1990 the bank received enough money to pay for the February payment.
 As of June 1, 1990 the defendants were behind for the months of March, April, May, and June.
 On June 6, 1990 a payment was made and credited to the month of March, 1990.
 On June 6, 1990 an attorney for Mrs. Ford wrote to the bank explaining that Mrs. Ford was having financial problems and that he was endeavoring to help her so that she could become current on her mortgage. (PS Ex. CC). As a result of that letter the bank was anticipating that the defendants would be able to bring their mortgage current.
 On July 24, 1990 the bank called Mrs. Ford and her attorney. The months of April, May, June, and July were then due. CT Page 7988
 On August 20, 1990 Mrs. Ford called the bank and said she needed a schedule for payments. The bank gave her a schedule but no payments were made.
 On October 25, 1990 Mrs. Ford called the bank and said she would be sending the bank about $12,000, and would have the account current by December 31, 1990. However, no payments were made.
 No further payments have been made. The bank claims that the amount due on the note as of May 16, 1995 is as follows:
 Principal $253,749.50 Interest 113,765.86 Late Charges 3,841.24 ----------- 371,356.60 Minus Escrow 23,120.68 ----------- $348,235.92
The bank seeks strict foreclosure and the Court finds that strict foreclosure should be granted. The fair market value of the property has been determined to be $242,500 (Plaintiff's Ex. F). Thus, there is no equity in the property which would justify a foreclosure by sale.
The defendants have raised various special defenses (the Third special defense having been withdrawn).
In the First special defense defendants claim that the plaintiff is estopped from seeking foreclosure because the plaintiff refused payments which would have brought their payments up to date. The court does not find this defense to be valid. On one occasion, January 12, 1989, the bank returned a partial payment to the defendants when their payments were three months in arrears. After that, however, the bank accepted several partial and full payments even though it was not required to do so. (Section 7 of Plaintiffs Ex. C). In any event, the Plaintiff clearly accepted several payments, some of which brought the payments of the defendants up to date.
In the Second special defense defendants claim that the CT Page 7989 plaintiff has violated various laws including General Statutes § 36-243b (Now § 36a-646). That statute provides "No creditor shall use any abusive, harassing, fraudulent, deceptive or misleading representation, device or practice to collect or attempt to collect any debt." The defendants have failed to show that the bank used any abusive, harassing, fraudulent, deceptive or misleading representation, device or practice in its attempt to collect the debt. On the contrary, the court finds that the plaintiff tried to accommodate the defendants when it was told by them (and their attorneys) that they were having financial problems. There was much correspondence (and several telephone calls) back and forth between the plaintiff and the defendants (and/or their lawyers) which lead the plaintiff to believe that the defendants would be able to bring their payments up to date. It was for this reason that the plaintiff held off bringing a foreclosure action sooner than it did.
In the Fourth special defense the defendants claim that the plaintiff is estopped from seeking foreclosure because it comes to court with unclean hands. As stated above, the plaintiff waited a long time to bring this suit in the hope that the defendants would be able to bring their payments current. The plaintiff should not be faulted for trying to accommodate the defendants.
The defendants have also filed a counterclaim in which they allege (1) that the plaintiff's dealings with them constituted a violation of General Statutes § 42-110a et seq. (CUPTA); (2) that the plaintiff breached the implied covenant of good faith; and (3) that it breached the terms of the note by making performance of the defendants impossible. The defendants have failed to prove the allegations of this counterclaim for the reasons set forth above. The plaintiff did not refuse to accept payments, did in fact deal with the defendants in good faith, and did not make the performance on the part of the defendants impossible.
Accordingly, the Court holds that judgment of strict foreclosure shall enter. A hearing shall be held to determine the law date, and the amount of deficiency if any.
State Judge Referee, Allen CT Page 7990